

Nathalie M. Gorman
1155 Avenue of the Americas, 26th Floor
New York, New York 10036
Direct Dial: 646.777.0021
Fax: 646.755.3397
ngorman@beneschlaw.com

May 1, 2025

**VIA CM/ECF**

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  **Amended Request for Pre-Motion Conference on Motion to Dismiss**
     *Kenneth Guerriero et al. v. BB Opco, LLC, et al., Case No. 1:24-cv-08778*

Dear Judge Castel,

We represent Defendant BB Opco, LLC ("Brooks Brothers") in the above-referenced matter. Pursuant to Paragraph 3.A.i of Your Honor's Individual Practices, we write to request a pre-motion conference so that Brooks Brothers may move to dismiss Plaintiffs Kenneth Guerriero and Tony Sikavi's ("Plaintiffs") First Amended Complaint (the "FAC") pursuant to Rule 12(b)(1), or, in the alternative, Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] The Initial Case Conference in this matter is scheduled for May 5, 2025 at 10:30 AM.

   1. *Relevant Background*

Brooks Brothers is a storied American clothing brand. Since 1818, it has upheld traditions and craftsmanship that have defined over 200 years of American style, dressing 39 presidents, along with industry leaders, cultural innovators, and countless Americans who value the brand's sterling reputation for classic, high-quality designs. Brooks Brothers sells clothes through its mainline retail stores, website, and outlet stores, and through third-party retailers such as Nordstrom. This case relates to the prices and discounts offered at Brooks Brothers' outlet stores.

According to the FAC, on November 12, 2023, Mr. Guerriero purchased a red cashmere sweater for $55.99 pre-tax—a "a purported 30%-off discount" from the listed "original" (reference) price of $79.99"—from the Brooks Brothers outlet store at Woodbury Commons, a high-end outlet mall in Central Valley, New York. FAC at ¶ 40. Mr. Sikavi, in turn, allegedly bought a "suit jacket" for $393.62 pre-tax on September 10, 2023, after receiving a "purported 25%-off discount" from the listed $523.50 original price from the Brooks Brothers outlet store at

---

[1] Pursuant to discussion between the Parties, Defendant submits this amended pre-motion letter to clarify a factual issue concerning the previous disclosure of Brooks Brothers' investigation of Plaintiffs' claims to Plaintiffs' counsel.

the Cabazon Outlets in Cabazon, California. *Id*. at ¶ 44.

Plaintiffs both claim to have been tricked into making their purchases, based on the following theories, supported by "information and belief": (a) "virtually all of the merchandise sold at Brooks Brothers Factory stores is manufactured for and sold exclusively at Brooks Brothers Factory outlet stores" ("made-for-outlet"), is "sold nowhere else," and is "inferior quality" to the items sold in Brooks Brothers' mainline retail stores; <u>and</u> (b) "Brooks Brothers Factory Store products are never—or virtually never—offered for sale, much less actually sold, at their 'original,' 'price tag' prices." *Id*. at ¶¶ 23, 27. While claiming that their counsel "conducted a large-scale, comprehensive investigation into Defendant's fake discounting scheme" from April 18, 2024, through present (i.e., 6-8 months after Plaintiffs' alleged purchases), this "investigation" appears to have consisted wholly of taking photographs of price tags and promotional signage of random items, perhaps on a single date. Plaintiffs' counsel does not appear to have investigated any single item (much less the items Plaintiffs actually purchased) on more than one date.

Plaintiffs claim to have been injured because: (1) they allegedly would not have made their purchases but for the alleged "fake sales;" (2) they allegedly did not receive the value or "promised discount" they expected (i.e., the higher ticket price); and (3) they allegedly paid more than the items were actually worth (a "price premium").

Plaintiffs purport to bring claims on behalf of New York and California classes of customers who "purchased from a Brooks Brothers Factory outlet one or more products at discounts from an advertised reference price and who have not received a refund or credit for their purchases." *Id*. at ¶ 76. On behalf of the New York class, Mr. Guerriero asserts claims under Sections 349 and 350 of New York's General Business Law. On behalf of the California Class, Mr. Sikavi brings claims under California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA).

### 2. *12(b)(1) Motion For Lack of Subject-Matter Jurisdiction*

#### a. *As a Matter of Fact, Plaintiffs Did Not Suffer the Injury Alleged*

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). "Concrete injuries are 'physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) (affirming dismissal pursuant to Rule 12(b)(1) for lack of standing).

Where the defendant places jurisdictional facts in dispute, the court may properly consider "evidence relevant to the jurisdictional question [that] is before the court." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001). Indeed, "where a party offers extrinsic evidence that contradicts the material allegations of the complaint, [the Second Circuit] suggest[s] that it would be error for the district court to disregard that extrinsic evidence." *Harty,* 28 F. 4th 435, 442.

Here, Plaintiffs claim to have been injured as a result of buying products from the Brooks Brothers outlet store that were allegedly never offered at the listed "original" price. Plaintiffs

2

could not possibly have been harmed this way, as alleged. Brooks Brothers' records, which may be considered on a factual challenge to the Court's jurisdiction (*see Harty*), show that Mr. Guerriero's sweater and Mr. Sikavi's blazer both *were* regularly offered at their listed higher reference prices. Thus, Plaintiffs each got precisely the good deals they expected, and were not injured as a result. If permitted to proceed with its 12(b)(1) motion, Brooks Brothers will prove:

- **Mr. Guerriero's red cashmere sweater**: This item was not "made for outlet," as alleged. Instead, it was originally sold in Brooks Brothers's mainline retail stores and website for $328—several times the allegedly inflated $79.99 reference price, and more than five times the amount Mr. Guerriero paid. It was marked down from $328 to $149.99 on March 30, 2022, and ultimately reduced to $79.99, before the single unit purchased by Mr. Guerriero was moved to the outlet store, where it was again offered for $79.99. Mr. Guerriero bought the sweater during a limited-time 30% off sale for $55.99. If he had bought the same sweater just two days later, after the sale ended, he would have paid the allegedly deceptive price on the price tag: $79.99.

- **Mr. Sikavi's jacket:** The FAC alleges that Mr. Sivaki purchased a jacket bearing an original price of $523.50, discounted by twenty-five percent for a sales price of $392.62. In fact, Mr. Sikavi bought a tuxedo jacket and matching trousers, as part of a "bundle and save" type promotion whereby customers could buy an entire suit (jacket and pants) for $399. Had Mr. Sivaki purchased only the jacket, without the pants, he would have paid the $523.93 ticketed price.

Brooks Brothers's extrinsic evidence directly "contradicts the material allegations of the complaint" and should be considered. *Harty,* 28 F. 4th 435, 442. Counsel for Brooks Brothers advised Plaintiffs' counsel several months ago that the items Plaintiffs allegedly purchased *had* been sold at full price. Plaintiffs' counsel did not request further information, but declined to dismiss this case or add new plaintiffs, instead maintaining the same allegations even upon filing an amended complaint.

The Court should dismiss under Rule 12(b)(1) because neither Plaintiff suffered the injury-in-fact alleged. They each wanted an item that had been offered at the higher ticketed price, and that's exactly what they got. If anything, the reference price and the discount signage led Mr. Guerriero to think he was getting a *worse* deal than the excellent one he received: he believed he got a thirty percent discount, when actually, he was getting eighty-three percent off the price at which the sweater was originally offered in Brooks Brothers' full-price stores. And, at the same exact time of Plaintiff Sivaki's purchase, the same exact jacket was being offered at the higher listed price. *Seegert v. Luxottica Retail N. Am., Inc.*, No. 17CV1372 JM(BLM), 2018 WL 1214888, at *3-4 (S.D. Cal. Feb. 23, 2018) ("40% Off Lenses With Frame Purchase" would not be deceptive if lenses purchased without frames were sold for full price).

Because Plaintiffs did not suffer any injury, this Court lacks subject-matter jurisdiction. *See, e.g., Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 149 (2d Cir. 2011) (affirming dismissal for lack of subject matter jurisdiction where plaintiff failed to allege a concrete injury in fact); *Treiber v. Aspen Dental Mgmt., Inc.*, 94 F. Supp. 3d 352, 366 (N.D.N.Y. 2015) (dismissing on same basis).

3

### b. *Plaintiffs Lack Standing to Seek Injunctive Relief*

"Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012). Here, Plaintiffs cannot satisfy this standard. If they were to shop at Brooks Brothers' outlets again, there is no chance that they would suffer the same injury—i.e., allegedly being tricked into buying something based on a mistaken belief they were getting a good deal. "[S]peaking generally, the law accords people the dignity of assuming that they act rationally, in light of the information they possess." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 225 (3d Cir. 2012). If Plaintiffs bought other products from Brooks Brothers outlets, "they [would] be doing so with exactly the level of information that they claim they were owed from the beginning." *Berni v. Barilla S.P.A.*, 964 F.3d 141, 148–49 (2d Cir. 2020); *see also Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) (plaintiff could not seek injunctive relief because he "has demonstrated that he is now keenly aware of XM's renewal practices and policies, and as such, he is very unlikely to suffer" future injury); *Hesse v. Godiva Chocolatier, Inc.*, 463 F.Supp.3d 453, 466 (S.D.N.Y. 2020).

### 3. *12(b)(6) Motion: Plaintiffs Fail to State a Claim*

In the alternative, Brooks Brothers seeks to move to dismiss the FAC pursuant to Rule 12(b)(6) on the basis that Plaintiffs have not stated a claim upon which relief can be granted.

### a. *Mr. Guerriero's N.Y. GBL Claims Fail Because He Got Exactly What He Paid For, at the Price He Agreed to Pay*

To state a GBL claim, the plaintiff must plead that he suffered an "actual injury" from the defendant's allegedly deceptive acts. *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55-56 (1999) (dismissing § 349 claim that plaintiffs were injured by tobacco manufacturers' deceptive advertising where the sole injury—that plaintiffs were injured by tobacco manufacturers' deceptive advertising—did not constitute actual harm under the statute); *see also Gristede's Foods, Inc. v. Unkechauge Nation,* 532 F. Supp.2d 439, 451 (E.D.N.Y. 2007) (standards under §§ 349 and 350 substantively identical). The FAC's pages of economic junk-science cannot change the fact that Mr. Guerriero walked into a store, picked out an item he liked (presumably after feeling it, trying it on, deciding it was stylish and comfortable, etc.), and received that exact item in exchange for an amount he agreed to pay for it.[2]

Under any theory, Mr. Guerriero has not suffered a cognizable injury. ***First***, it is well settled under New York law that allegations that a plaintiff would not have bought an item "but for" an alleged deception are insufficient to state a claim under N.Y. GBL § 349. *See, e.g., Small*, 720 N.E.2d at 898; *accord DaCorta v. AM Retail Grp., Inc.*, No. 16-cv-01748 (NSR), 2018 WL 557909, at *7 (S.D.N.Y. Jan. 23, 2018) (dismissing claims of perpetual discounts in outlet stores). ***Second,*** Mr. Guerriero claims to have been injured because he did not receive the windfall he allegedly expected—that is, a sweater worth the $79.99, in exchange for far less money. New

---

[2] In *Binder v. Michael Kors*, another pricing lawsuit brought by Plaintiffs' counsel here, this Court dismissed the plaintiff's GBL claim on precisely this basis. *Binder v. Michael Kors (USA), Inc.*, Case No. 23-cv-3941 (DEH), 2024 WL 3227943, at *4-*5 (S.D.N.Y. 2024). *Binder* is now on appeal in the Second Circuit.

York district courts routinely reject this "but-I-thought-I-got-a-bargain" theory as well, as it "impermissibly combines deception (the appearance of a bargain) with injury (there was no actual bargain)." *Belcastro v. Burberry Ltd.*, No. 16-CV-1080 (VEC), 2017 WL 5991782, at *3 (S.D.N.Y. Dec. 1, 2017). **Finally**, Plaintiff's alleged "price premium" theory fails because he does not allege any facts to suggest that he paid more than the sweater was worth. *See*, *e.g.*, *DaCorta*, 2018 WL 2018 WL 557909, at *7 ("Plaintiff's apparent belief that simply alleging the word 'premium' will suffice, is simply incorrect.").

### ***b. Plaintiff Sikavi's California Claims All Fail Under Rule 9(b)***

Plaintiff Sikavi's UCL, FAL, and CLRA claims all fail to satisfy Rule 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009) (Rule 9(b) applies to UCL, FAL, and CLRA claims grounded in fraud).

In the pricing context, this Court, alongside numerous others across the country, has consistently ruled that to meet the 9(b) standard, a plaintiff alleging he was deceived by an advertised price must investigate the price charged for the specific item he purchased, and provide details concerning his investigation to substantiate why advertising *that* price, for *that* item, was fraudulent. *See*, *e.g.*, *Robey v. PVH Corp.*, 495 F. Supp. 3d 311, 323 (S.D.N.Y. 2020) ("While the plaintiff claims to have conducted an investigation,' the plaintiff has failed to allege with specificity that the investigation was sufficient to establish that *the price cited* was a 'fictitious former price'") (emphasis added). If a plaintiff fails to provide such explanation, his claims fail to meet the heightened pleading standard. *Id*. *Cf. Sperling v. DSW, Inc.*, 669 F. App'x 654, 655 (9th Cir. 2017) (affirming dismissal of plaintiff's deceptive pricing claims because she failed to "allege sufficient facts to show with particularity how [and] why" the reference prices on the items she purchased were false or deceptive).

Just so here. The FAC does not allege any attempt to investigate the jacket purchased by Plaintiff. This case is therefore similar to *DiCicco v. PVH Corp.*, 19-cv-10092, 2020 WL 5237250, at *4 (S.D.N.Y. Sept 2, 2020), where the Court explained: "[H]ere, … there is no factual allegation tending to show that the former prices listed for the three items that [plaintiff] purchased… were fictitious… Contrary to [plaintiff's] assertion, the price tags, sales receipt, and the banners hung on the store's front… only show that… items were on sale that day, not that they were always on sale."). Plaintiffs also do not provide any detail concerning the unrelated, other items that their counsel apparently investigated—including whether they saw any given item on sale on more than a single day. *See Robey*, 495 F. Supp. 3d at 323; *Lisner v. SPARC Grp. LLC*, No. 2:21-cv-05713-AB, 2021 WL 6284158 (C.D. Cal. Dec. 29, 2021) ("Plaintiffs' failure to allege the pricing information for the items Plaintiffs purchased in the FAC… is fatal to their claims…). *Accord Nunez v. Best Buy Co.*, 315 F.R.D. 245 (D. Minn. 2016) (dismissing complaint incorporating data from an independent study that tracked pricing of items sold by retailer but did not include the items purchased by plaintiffs).

Mr. Sivaki also does not allege with particularity what allegedly false representations he actually saw and relied on. He claims to have "purchased a suit jacket that bore an 'original' (reference) price of approximately $523.50 and a purported 25%-off discount (-$130.88)," but does not specify what this price display looked like, or what language he relied on. These omissions provide an additional basis for dismissal under Rule 9. *See*, *e.g.*, *Rael v. N.Y. & Co.*,

5

No. 16-cv-369-BAS(JMA), 2016 WL 7655247, at *6 (S.D. Cal. Dec. 28, 2016) ("Nowhere does Plaintiff give details as to what signs she relied on, what the signs said or looked like, or where they were located."); *Nunez v. Best Buy Co.*, 315 F.R.D. 245, 249 (D. Minn. June 7, 2016) (complaint failed Rule 9(b) standard because plaintiff did "not specify whether he relied upon, for example, a price tag in a store, a paper flyer, an e-mail, or a price listed on Best Buy's website").

### c. Plaintiffs' Claims for Equitable Relief Should Also Be Dismissed Because Plaintiffs Do Not Lack an Adequate Remedy at Law

Plaintiffs both seek equitable relief in the form of injunctive relief and restitution. In federal court, "claimants seeking equitable relief must ... show that they have no other available or adequate remedy." *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 662 (2d Cir. 1997). "For that reason, in cases like this one [alleging false advertising], courts frequently dismiss plaintiffs' claims for equitable relief as improper due to the availability of legal damages." *Ashour v. Arizona Beverages USA LLC*, No. 19 CIV. 7081 (AT), 2025 WL 961682, at *4 (S.D.N.Y. Mar. 28, 2025) (dismissing UCL claim where plaintiff did not allege an adequate remedy). In the context of UCL and CLRA claims in particular, courts have repeatedly affirmed the dismissal of equitable-relief claims where the plaintiff failed to explain how damages would not provide an adequate remedy. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020); *Philips v. Ford Motor Co.*, 726 F. App'x. 608, 609 (9th Cir. 2018); *In re Apple Processor Litig.*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023).

While Plaintiffs conclusorily assert that damages would not make them whole, their reasons—namely, that damages will not remedy any future injuries, and that they could conceivably recover more money in the form of restitution than damages—do not answer the central question of whether damages, if ultimately recovered, would provide an adequate remedy. Courts regularly apply the adequate-remedy principle to bar claims for injunctive relief, including in UCL cases. *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974); *Philips*, 726 F. App'x. at 609. And the adequate remedy principle regardless of whether the plaintiff ultimately recovers damages. *Mullins v. Premier Nutrition Corp.*, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018), *aff'd sub nom. Sonner*, 962 F.3d 1072 ("the relevant test is whether an adequate damages remedy is available, not . . . whether she will be successful in that pursuit.").

### 4. Conclusion

For all of these reasons, Plaintiffs' FAC should be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(1) or, in the alternative, Rule 12(b)(6). Brooks Brothers therefore respectfully requests that the Court set a pre-motion conference so that it may move this Court accordingly.

Respectfully submitted,

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP

  *s/ Nathalie M. Gorman*
Nathalie M. Gorman
Stephanie Sheridan, *pro hac vice forthcoming*

Meegan Brooks, *pro hac vice forthcoming*

*Counsel for Defendant BB Opco LLC*

cc: Counsel of Record for Plaintiff (via CM/ECF)